IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 4, 2001

**ANTWONE TERRY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Lake County**
**No. 99-CR-7719    R. Lee Moore, Judge**

---

**No. W2001-00177-CCA-R3-CD  - Filed April 10, 2002**

---

The petitioner, Antwone Terry, appeals the denial of his petition for post-conviction relief.  In this appeal, the petitioner contends (1) that he did not receive the effective assistance of counsel and (2) that the state engaged in prosecutorial misconduct.  The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Timothy C. Naifeh, Tiptonville, Tennessee, for the appellant, Antwone Terry.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

On July 23, 1997, the victim, Tommy Crawford, who was working as a corrections officer in the Academic School at the Northwest Correction Center (NWCC), noticed that the petitioner was smoking a cigarette during a class break.  Because smoking was not permitted inside the building, Crawford directed the petitioner to extinguish his cigarette.  When the petitioner failed to comply, Crawford repeated his directive.  The petitioner responded by grabbing Crawford and knocking him to the ground.  Crawford sustained a broken hip which required surgery.

Afterward, the petitioner admitted to corrections officer Lewis Rodriguez that he was responsible for the assault.  Later in the day, Victor Middlebrook, an internal affairs investigator for the Department of Correction, interviewed both the petitioner and the victim.  After being advised of his rights, the petitioner informed Investigator Middlebrook that he had struck Crawford several times.  He also admitted that when Crawford attempted to retaliate, he pushed him to the ground. The petitioner assured Investigator Middlebrook that no other inmates were involved in the attack.

Joel Foster, a corrections officer at NWCC who assisted in the investigation of the incident, was present when the petitioner confessed to the assault. In addition, Officer Foster prepared a photographic lineup from which the victim identified the petitioner as his assailant.

The petitioner, convicted of one count of aggravated assault, received a Range III, persistent offender sentence of ten years. The sentence was ordered to be served consecutively to concurrent sentences the petitioner was serving at the time of the assault. This court affirmed the conviction on direct appeal. See State v. Antwone Terry, No. W1999-00355-CCA-R3-CD (Tenn. Crim. App., at Jackson, April 4, 2000). Later, the petitioner filed this petition for post-conviction relief, alleging among other things that he was denied the effective assistance of counsel and that the state was guilty of misconduct by failing to disclose favorable evidence.

At the evidentiary hearing on the petition, the petitioner testified that his trial counsel failed to interview any witnesses prior to his trial. He claimed that he informed counsel that there were several witnesses to the incident but conceded that he did not know their names. According to the petitioner, other inmates whose photographs were included in the lineup might have been potential witnesses. It was his contention that his trial counsel should have interviewed the inmates to determine whether any of them possessed favorable information. The petitioner also claimed that his attorney should have located witnesses who would state that the victim was attacked by other inmates.

The petitioner also testified that his trial counsel should have obtained the services of a handwriting expert. He claimed that the signature on the handwritten statement prepared by Investigator Middlebrook was forged and asserted that an expert could have confirmed that. The petitioner also contended that his trial counsel failed to adequately communicate at trial and during the direct appeal. He claimed that his counsel met with him only once before trial, failed to respond to his letters, and refused to file requested motions prior to trial or ask certain of his proposed questions for witnesses.

Investigator Middlebrook testified that he had prepared the handwritten statement of admission and that the petitioner signed the document, making and initialing several changes. He recalled that after the statement was signed, the petitioner read the statement into a tape recorder. The tape was lost before trial. While Investigator Middlebrook could not recall whether he had spoken with the petitioner's counsel prior to trial about the loss of the tape, he remembered that the loss of the tape was an issue of lengthy discussion during the trial. Investigator Middlebrook also testified that he took statements from several inmates and recalled that he provided the statements to the District Attorney General.

Frank Wilburn, who was incarcerated at NWCC at the time of the assault, testified that he walked from his classroom into the hallway when he heard the altercation and saw the victim point his finger and order the petitioner to put his cigarette out. Because his own teacher made him return to the classroom, Wilburn did not see the assault. He conceded that the petitioner's counsel did not question him about the incident.

Trial counsel, who represented the petitioner at trial and on appeal, testified that he met with the petitioner at least once while the petitioner was incarcerated at West Tennessee High. He added that an investigator for the Public Defender's office met with the petitioner at the facility on at least one occasion. Counsel testified that he received several letters from the petitioner and accommodated those requests that appeared, in his view, to be proper. Recalling that the petitioner asked him to interview the other inmates that were included in the photographic lineup, trial counsel confessed uncertainty but stated that he believed an investigator for his office had attempted to locate those individuals. Trial counsel was not aware of any testimony that would have been beneficial to the petitioner. He described the theory of defense as one of self-defense rather than one of mistaken identity.

Trial counsel conceded that he did not go to the prison to interview Investigator Middlebrook or Officer Foster with regard to the loss of the tape recording. Although he had asked the District Attorney General to provide a copy of the tape and Investigator Middlebrook indicated that one would be provided, trial counsel explained that he was not made aware that the tape had been lost until trial. Counsel acknowledged that he had not interviewed Investigator Middlebrook's superiors to determine whether the tape had, in fact, been lost.

Counsel explained that a handwriting expert was not necessary because the petitioner had acknowledged that his signature appeared on the statement. He testified that he learned at a pretrial hearing on the petitioner's motion to suppress the statement that Investigator Middlebrook had written the body of the statement and the petitioner had signed it.

The trial court found that the petitioner had failed to prove by clear and convincing evidence that he received the ineffective assistance of counsel. Specifically, the trial court ruled that the petitioner had failed to demonstrate that his counsel's performance was deficient. In addition, the trial court noted that the petitioner had failed to establish that any failure of counsel resulted in prejudice.

**I**

The petitioner first asserts that he was denied the effective assistance of counsel at trial. Specifically, he contends that trial counsel was ineffective for failing to adequately investigate, failing to retain a handwriting expert, and failing to adequately communicate with him. The petitioner claims that his trial counsel should have interviewed the inmates whose photographs were included in the lineup because they might have possessed favorable information, argues that a handwriting expert would have established that his signature on the handwritten statement prepared by Investigator Middlebrook was a forgery, and asserts that the degree of communication with trial counsel was minimal.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the

defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

The proof at the evidentiary hearing suggests that the communication between trial counsel and the petitioner could have been more extensive. Trial counsel was uncertain whether his office had requested that an investigator contact potential witnesses and he apparently did little to make up for any deficiencies in the investigation of the crime. The proof suggests that the defense did not conduct interviews of potential witnesses. Of equal importance, however, is that the petitioner has failed to demonstrate how those deficiencies affected the results of the trial. See Strickland, 466 U.S. at 693. No witnesses at the evidentiary hearing shed new light on the circumstances. In Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990), this court placed the burden on the post-conviction petitioner to produce whatever testimony may have been helpful. No one, expert or otherwise, was called to corroborate the claim that the signature on his statement was a forgery. In our view, the evidence does not preponderate against the finding of the trial court that the petitioner was not prejudiced by any inaction on the part of his trial counsel.

## II

The petitioner also alleges that the state engaged in prosecutorial misconduct with regard to the tape recording of his statement to Investigator Middlebrook. The state contends, and the trial court ruled, that this issue has been previously determined.

Post-conviction proceedings may not be employed to raise, relitigate or review questions decided and disposed of in a direct appeal from a conviction. Morgan v. State, 1 Tenn. Crim. App. 454, 445 S.W.2d 477 (1969). Tennessee Code Annotated section 40-30-206 governs the concept of previous determination:

> A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

Tenn. Code Ann. § 40-30-206(h). Here, the petitioner presented the issue of the lost tape as a ground for relief in both the motion for new trial and on direct appeal. While couched in slightly different terms in his post-conviction petition, the issue presented earlier is essentially the same. This court held on direct appeal that the trial court accredited the testimony of Investigator Middlebrook that the tape recording of the statement had simply been lost. This court ruled that the state's failure to produce the tape did not warrant a new trial. In our view, the issue has been previously determined. See Tenn. Code Ann. § 40-30-206(h).

Moreover, the petitioner would not be entitled to relief on the merits of his present claim. While the issue is phrased in terms of prosecutorial misconduct, the petitioner is essentially arguing that the state failed to produce exculpatory evidence as required under Brady v. Maryland, 373 U.S. 83 (1963). Before this court may find a due process violation under Brady, the following elements must be established:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
2. the State must have suppressed the information;
3. the information must have been favorable to the accused; and
4. the information must have been material.

State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995) (as amended on rehearing). While the petitioner's trial counsel requested that the state provide him with a copy of the tape, none of the other factors appear to be present. Thus, the petitioner is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE